Taylor, C. J.
In this case, we analyze what comprises the element of “readily observable and avoidable dangers” in a lawsuit involving a “common work area” of a construction site. In Funk v Gen Motors Corp,[1] this Court established the common-work-area doctrine, which by its elements is not a strict-liability tort but is instead one that imposes liability only if the general contractor itself fails to prevent negligence.[2] Thus, the danger cannot be just the unavoidable, perilous nature of the site itself. Rather, the danger for which a duty attaches is an avoidable danger to which a significant number of workers are exposed, such as — in Funk and this case — failure to have fall-protection devices to protect workers from falling from a height on the project. The lower courts erred in ascertaining the relevant danger, basing their analyses on the conclusion that an elevated mezzanine, which at the time of the injury was necessarily without perimeter protection, itself created a high degree of risk to a significant number of workers. Instead, the proper danger to focus on was working at dangerous heights without any protection from falls, and the proper analysis concerned whether a significant number of workers were exposed to this avoidable risk.
*108 Because both lower courts misapprehended the appropriate danger to examine and decided the case on that erroneous basis, they also erred on the issue whether a significant number of workers would be exposed to the relevant peril. With the appropriate danger clarified, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.
i
Plaintiff was a carpenter employed by B & H Construction to work on the construction of a new school building. Defendant Barton Malow Company was the construction manager on the project.[3] On the day of plaintiffs injury, plaintiff and a coworker were moving sheets of drywall from a scissors lift to the mezzanine level of the project. They raised the lift to the height of the mezzanine and removed the cable barrier around the perimeter of the mezzanine, an action required to allow ingress. When they began carrying the first sheet of drywall from the lift to the mezzanine, plaintiff was not wearing a fall-protection harness, contrary to job-site rules of which he was aware. As plaintiff was moving onto the mezzanine, the sheet of drywall cracked and plaintiff lost his balance, falling 13 to 17 feet to the floor. He was injured, but undisputedly would not have been had he been wearing the required protective harness.
Plaintiff sued defendant for negligent performance of a contract[4] and negligence under the common-work-area doctrine, under which a general contractor may be *109 held liable for injuries caused by dangers in common work areas. The elements of such a claim are: (1) the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workers (4) in a common work area.[5] Plaintiff asserted that defendant had failed to ensure that plaintiff would use proper fall protection while working on the lift and the mezzanine, despite knowing that such protection was necessary when the perimeter cable was lowered.
Because numerous other workers from other trades would be required to use the lift to access the mezzanine and lower the cable to enter the mezzanine, plaintiff argued that the situation created a high degree of risk to a significant number of workers.
Defendant moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), arguing that plaintiff had not shown the existence of a high degree of risk to a significant number of workers because the area was not accessible to a significant number of workers at the time of the accident and because plaintiffs individual failure to use fall protection did not create a high degree of risk to a significant number of workers. Defendant also argued that because plaintiffs own employer was contractually responsible for its workers’ observing proper safety procedures, plaintiff had not shown that defendant failed to act reasonably.
The trial court denied defendant’s motion for summary disposition, concluding that plaintiff had sufficiently created a question of material fact regarding the number of workers using the area. The court did not *110 discuss the nature of the danger or whether there existed a high degree of risk. The trial court determined that no dispute existed regarding whether a fall was readily avoidable if personal fall protection had been used and that defendant’s safety supervisor knew this.[6] While acknowledging that defendant had presented a serious challenge to plaintiffs allegation of unreasonable action, the court held that this was properly a question for the jury.
The Court of Appeals affirmed.[7] It agreed with the trial court that “plaintiff faced the danger of working on an elevated platform that did not have any permanent perimeter protection to protect him from falling while loading materials onto the mezzanine.”[8] It said that the trial court properly focused on the mezzanine’s lack of perimeter protection, not plaintiffs failure to use personal fall protection, even though the Court acknowledged that such protection would have prevented plaintiffs injuries. The Court determined that a significant number of workers from other trades would be exposed to the same hazard of having to use the unprotected mezzanine opening when entering and leaving the lift and disagreed with defendant that the number of workers present at the specific time of the injury was relevant.[9] The Court concluded that defendant had supervisory and controlling authority over the jobsite and that the mezzanine was a common work area.[10] The *111 Court held that the four elements of the common-work-area doctrine were met because a question of material fact existed regarding whether defendant took reasonable steps to guard against the danger.
Defendant applied for leave to appeal, and we ordered oral argument on whether to grant the application or take other action, directing the parties to address (1) whether the proofs presented in the trial court were sufficient to satisfy the standard for general contractor liability set forth in Ormsby v Capital Welding, Inc[11] and (2) whether defendant’s motion for summary disposition should have been granted.[12]
n
This Court reviews de novo a trial court’s grant or denial of a motion for summary disposition.[13] We review a motion brought under MCR 2.116(0(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party.[14] Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.[15]
ill
In Funk, this Court, exercising its common-law authority, expanded the duties of those ultimately in control of a construction project worksite (most often *112 the general contractor) by creating the common-work-area doctrine. This doctrine was described as follows:
We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen.[16]
The doctrine is understood as an exception to the general rule that, in the absence of its own active negligence, a general contractor is not liable for the negligence of a subcontractor or a subcontractor’s employee[17] and that the immediate employer of a construction worker is responsible for the worker’s job safety.[18]
Essentially, the rationale behind the Funk doctrine is that the law should be such as to discourage those in control of the worksite from ignoring or being careless about unsafe working conditions resulting from the negligence of subcontractors or the subcontractors’ employees. This Court explored the history of the doctrine in depth in Ghaffari v Turner Constr Co,[19] in which we observed that “ ‘in many cases only the general contractor is in a position to coordinate work or provide expensive safety features that protect employees of many or all of the subcontractors.’ ”[20] Subcontractors and their employees, even if they are aware of hazards, may be unable to rectify the situation themselves or to compel others to do so.[21] In cases in which normal safety precautions can reduce a hazardous con *113 dition so that it no longer creates a high degree of risk to workers, the general contractor’s duty is to take reasonable steps to ensure that those safety precautions are taken.[22] In such cases, in order to state a cause of action against a general contractor under the common-work-area doctrine, the plaintiff must show that the general contractor’s failure to reasonably ensure that workers were observing safety procedures resulted in a significant number of workers being exposed to a high degree of risk in a common work area.
The fundamental question presented in this case, in which the general contractor was in control of the worksite, is: What was the danger creating a high degree of risk that is the focus of the general contractor’s responsibility? Funk itself provides assistance in answering this question. There, this Court analyzed a similar common-work-area fall. In Funk, as here, the plaintiff would not have been injured had he worn a fall-protection device or had netting been provided. This Court agreed with the Funk plaintiff that the defendants had
exposed him to avoidable injury by allowing subcontractors to order the men to work at dangerous heights without any protection from falls in a job environment in which laborers were expected to complete their assigned tasks without regard to the absence of safety equipment guarding against injury in the event of a mishap.[23]
The Court in Funk was clear that the danger at issue was not the height itself, but the fact that the men were required to work “at dangerous heights without any protection from falls.” To hold that the unavoidable height itself was a danger sufficient to give rise to a duty would essentially impose on a general contractor strict *114 liability for any injury resulting from a fall from an elevated common work area. This has never been the law. Moreover, because working at heights is generally an unavoidable condition of construction work, it cannot, by itself, be the avoidable danger Funk described. Hazards, including dangerous heights, are commonplace in construction worksites. In some situations, a general contractor may be able to remove a particular hazard, but general contractors simply cannot remove all potential hazards from a construction workplace. If a hazard cannot be removed, the general contractor can take reasonable steps to require workers to use safety equipment and procedures, thereby largely reducing or eliminating the risk of harm in many situations.
Accordingly, in this case, as in Funk, the danger that created a high degree of risk is correctly characterized as the danger of working at heights without fall-protection equipment. It is this danger to which a significant number of workers must be exposed in order for a claim to exist.[24]
rv
With the relevant danger correctly perceived, the error of the lower courts’ analyses becomes apparent. *115 While defendant’s motion for summary disposition identified the correct danger and further raised the issue that plaintiffs own failure to wear a fall-protection device did not create a high degree of risk to a significant number of workers, the trial court and the Court of Appeals erred by misidentifying the danger and inevitably erred in the subsequent analysis regarding how many other workers were exposed to the risk.[25] We therefore reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.
Weaver, Corrigan, Young, and Markman, JJ., concurred with Taylor, C. J.

 Funk v Gen Motors Corp, 392 Mich 91; 220 NW2d 641 (1974), overruled in part on other grounds by Hardy v Monsanto Enviro-Chem Sys, Inc, 414 Mich 29 (1982).

 Funk, supra at 108.

 For purposes of its summary disposition motion, defendant conceded that it served as general contractor for the project. Accordingly, the trial court made no decision regarding that issue.

 This claim was dismissed by the trial court and is not at issue here.

 Ormsby v Capital Welding, Inc, 471 Mich 45, 57; 684 NW2d 320 (2004); Funk, supra at 104.

 Notably, in its discussion of plaintiffs active-negligence claim, the trial court observed that “[p]laintiff had tools of the trade available to protect himself and [sic] which should have been provided by his employer, or which he should have been trained to use by his employer.”

 Latham v Barton Malow Co, unpublished opinion per curiam of the Court of Appeals, issued October 17, 2006 (Docket No. 264243).

 Id. at 3.

 Id.

 Id. at 4. Because defendant had conceded for purposes of the motion hearing that the mezzanine was a common work area, the trial court made no finding on the issue.

 Ormsby, n 5 supra.

 Latham v Barton Malow Co, 477 Mich 1118 (2007).

 Ormbsy, supra at 52.

 Greene v A P Products, Ltd, 475 Mich 502, 507; 717 NW2d 855 (2006).

 Id.

16 Funk, supra at 104.

 Ormsby, supra at 53.

 Funk, supra at 102.

 Ghaffari v Turner Constr Co, 473 Mich 16; 699 NW2d 687 (2005).

 Id. at 20, quoting Funk, supra at 104.

 Funk, supra at 104.

 Ormsby, supra at 54, quoting Funk, supra at 106-107.

23 Funk, supra at 100.

 The dissent’s formulation of the common-work-area doctrine is hard to understand. As we grasp it, its central failing is that the dissent does not concede that Funk applies only to avoidable dangers. Heights on construction projects, we conclude, as did the Funk Court, are not avoidable. Thus, heights are not by themselves hazards addressed by Funk. We have never said what fall-protection gear is needed at heights. The question is whether fall protection was available and whether the general contractor took reasonable steps to see that it was used. The dissent appears to assert that the issue is, however, one of strict liability for the general contractor, not an issue of taking reasonable steps. In short, under the dissent’s analysis, Funk would be not a negligence rule, as it was designed to be, but would instead be a strict-liability rule.

 Although we focus here on only one of the common-work-area elements, we note that plaintiff must satisfy all the elements that give rise to a duty owed by a general contractor. Funk also requires plaintiff to show that the failure of a significant number of workers to take safety precautions was readily observable and that the failure was avoidable. Finally, the plaintiff must, of course, also show that the defendant failed to take reasonable steps to ensure compliance and that the danger existed in a common work area.